All right, Mr. Adams, you may proceed. Good morning, Your Honors. May it please the Court. This is a scale model of a ball bag. This is the same exhibit that was used at the claim construction hearing. It's about 1 16th in terms of volume, the size that a real one would be. And here is the spout. I don't have one set of control bars, but I can invert it and show what happens when you concentrically engage the bag with either the Spiroflow claimed invention or the Flexicon claimed invention. It's evenly engaged from all sides, as opposed to the prior art which disclosed something like this. I want to show you two of Flexicon's exhibits. This is exhibit 20, exhibit 21. It was the subject of a deposition question to our engineer. These are the two relevant shapes defined by the control bars of the Flexicon device. Well, I'm not sure that's true, in the sense that I think there are two separate issues here, one is that we shouldn't consider the shape of the control bars before they engage the bag. That's point one. And two, if you can find yourself looking at the shape framed by the control bars once they engage, that the shapes are similar. So what you're showing us now, I take it, is designed to show that once there's engagement, there is a similar shape, or at least there's a fact issue as to whether there's a similar shape. Yes, but Your Honor, that goes right back to the issue of context. No, but is my statement correct that we have these two separate issues here? One, do we look at the bars only when they're engaged, or do we look at them before they're engaged with the bag? And two, is the shape during engagement similar? Well, I think the answer to the first part is it conflates with the context. And the answer is you look at the bars when they're doing what the claim says they're designed and supposed to do. But that's the difference between you and your opponent. Because they say we look at the bars even before there's engagement. There's a circular shape. A circular shape is not like a diamond shape. Correct. So you'd lose, would you not, if we said, oh well, the key question here is the shape of the bars without regard to engagement with the bag? No. And the reason is that you still get back to the question of insubstantiality. If you ask yourself, well, what is the substantial nature of the circular, which is the completely retracted position of the bars, when they're deactivated, completely retracted, what is the substantiality of the difference in that position with regard to the language of the claim, which says that you engage the neck of the bag evenly from all sides? And the answer is there is no substantial difference because it's not functioning the way it's supposed to function. But again, it's context one way or the other. And I'll direct your honors at the same time to Appendix 626. We had evidence from, again, from our engineer. He took flexicons on engineering drawings. And he showed, with respect to several different size bag openings, what the shape would be when the bars are doing what the bars are supposed to do. And you see up here, for example, when the bars, even when the bars are not engaging the bag. But they're in there. But you're basically saying in these pages that figure 1 and 6 and 9 shouldn't be considered at all because those are figures that depict the situation before the engagement of the bars of the bag. Correct, but for the reason that they can't have any effect on the substantiality or insubstantiality of the claim, of the accused apparatus in relation to the claim because they're not operating within the environment of the claim. And this court has said over and over again that what you do to inform yourself about insubstantiality is you start by looking at the context. And that's what's really at issue here. This evidence, it's in the record. It was not considered or mentioned by the district court at all. But I think that at a bare minimum, it raises an issue of fact. And I direct your honor's attention, for example, to figures 2, 3, 4, and 5. I don't think it's even, I think it's a good argument that the shape doesn't change at all within the context of the patent. But I'm here on a doctrine of equivalence because I think that's where the issue is best joined. Furthermore, are you then accepting the claim construction that suggests that for literal and principal purposes, we look to the shape framed by the bars even before bag engagement? That was not what the district court said. All the district court said on literal infringement was that the shape can't change at all. And that's what, for purposes of arguing doctrine of equivalence, we simply don't get to that issue. You argued in your doctrine of equivalence argument that because Flexicon's device is interchangeable, that somehow provides proof of infringement by equivalence. But isn't interchangeability simply a measure of function with no relevance at all to the way in which it performs that particular function? The Supreme Court has said on several occasions that interchangeability It has probably said that interchangeability would be at least a part of the equation. But dispositive, it certainly is not, is it? And we never said that. So full interchangeability is only relevant to perhaps performing the same function? Yes. Which could be performed in a vast variety of different ways that are not equivalent, right? It's a make-weight. But it nevertheless should have been considered, and it wasn't. And again, it places the facts in context. Flexicon's own advertising refers to simply their bars as concentrically engaging the neck of the bag, exactly as I demonstrated. Even in Flexicon's brief, when they're describing the device that we show in our patent in Figure 3, they refer to the bars in one position as being roughly square, and in the partially engaged position, similarly square-shaped, which I think, again, is some evidence of where we've come down on context in this case. Now contrast that with Flexicon's evidence and with the evidence referred to by the district court. The claim construction and the decision on insubstantiality was completely circular. And that is, all the district court did to determine insubstantiality or substantiality was say, well, if the shape changes, then it has to be substantial. That's literally what the district court says in several different ways. And you can look in Flexicon's brief on page 37. They have a chart which sets out a couple of views on the left, and what is their evidence? Let me ask you, suppose that we look at 626 and 627, and we consider that the shape of the bars before engagement with the bag is pertinent. Isn't it the case that there is a substantial difference between the shape shown in figures 1, 6, and 9 and the other figures? No. If your honor, what you need to be looking at are the shape of the bars themselves, which I would contend in all of those views are football-shaped. I just filled in the blanks in 1, 6, and 9, so that the shape of the bars is accurately depicted, and I see the same shape, the football shape. So you're saying it's the shape of the bars. You're not arguing that it's the shape of the bag. No, of course not. No, of course not. Seriously, your honor, the bag can't possibly conform to the shape of the bars. That's the whole point when you get to context and insubstantiality. You see how it gathers together. This is a totally random movement. If you did it ten times in a row, you would come up with a different shape of the bag in the same way that you would draw it close together. And that's really the whole point here. If this was supposed to be a shape of a part in a Swiss watch, and this was what the shape actually looked like, it would be a totally different situation than when you're dealing with a piece of heavy tarp that's holding 2,000 pounds of aspirin powder. And that's what this type of thing is typically used for. This shape is going to be confined by the shape of the bars, but it has no bearing, no relevant bearing, on what the actual shape of the neck is. And that was the point that we tried to drive home before the district court. Now, where did the district court go wrong? I mean, it entered into a completely circular argument, which was invited by Flexicon. If you look at their charts on page 37 and 38 of Flexicon's brief, they purport to set out the evidence that supports their position on the actual claim language and the court's claim construction. And what did they say in the right-hand column? They simply say there's a substantial difference. Why? Because the shape changes. All that's going back to the same literal infringement argument. Didn't your own 30b-6 witness, Mr. Hesketh, admit that there's a shape change in the accused device? He said they were very similar. That's his testimony on page 39. It's quoted on page 29 on Flexicon's brief. And he was shown these very two drawings. That's where these came from. These were simply enlargements of their two exhibits out of their brief. And Mr. Hines asked him, well, what about these two shapes? He said they're very similar. And I submit that they are. But are those two depictions complete? They are two of the four exhibits. You can't really prevail by just emphasizing a little part of the evidence. That's why we did the exhibits that Mr. Hesketh sponsored that are shown on page 626 and 627, Your Honor. It would be impossible to have an infinite number of exhibits showing every conceivable motion. But no one has ever contested or said that pages 626 and 627 were not representative, and they are. And they're simply further elaboration of what you see in Exhibits 20 and 21. The other two exhibits, which were shown to Mr. Hesketh, appear on the following page. And they are views of the bars when they're in their fully retracted position and when they're in a partially engaged position. I'm sorry, a partially activated position, but before they engage the back. And again, that's the point. Your Honor, this is a Friedman. This is not a Friedman-type case. This is a Dupuy-type case. This court has had numerous opportunities to decide in various situations, well, is this a change or a alteration or a variation in kind, or is it one of a degree? And I think as far as any two cases I'm familiar with that have been decided recently, those two cases pretty clearly set up the boundaries between the two. In the Friedman case, you had a seat that was claimed as being slidably moved along a linear path. The accused vice was a seat that was fixed and could only rotate. And in that case, Judge Mischel said, huh, that's a change in kind. You can't argue so broadly in the doctrine of equivalence that something that is claimed as sliding back and forth is actually something that's fixed in place and rotated. In the Dupuy case, on the other hand, you had a... Do you want to save some of your rebuttal time? I'd save five minutes, Your Honor. Well, you're into it already. You now have about a minute and a half left. I'll save my minute and 20 seconds. Okay, good then. Thanks. Morning, Your Honors. My name's Randy Heisman here on behalf of FlexCon and with me is Lance Lawson, co-counsel. We also have David Gill, who's the president of FlexCon here. Our position is the district court got it right. They looked at the issue of claim construction in accordance with Phillips. They looked at the specification of drawings and printed evidence. They also looked at the expert report that we submitted that was unrebutted, and they said a person of ordinary skill in the art would read the shape doesn't change to mean the shape doesn't change. Now we've seen figure three of the pattern. Yeah, but wait, wait. At this point, let's assume that that's the correct claim construction. Why isn't a shape which changes slightly or is very similar, equivalent, to a shape that doesn't change? I think if we look at Dupuy's Spine, where specifically the item was a very small section of a sphere or a very small section of a cone, and it is in fact a change in degree, it is a minor, insubstantial change in a shape, I agree that the doctrine of equivalence could apply, but that's not the facts of this case. How do we know that that's not the facts of this case? Isn't there evidence that the shapes were very similar? The evidence that we put in, specifically, was the 30B6 estimate. Yeah, but it's not your evidence that we have to worry about here. It's a summary judgment. There may have been an issue of fact raised by your evidence, but we have to talk about the evidence in the light that's most favorable to the plaintiff. Okay. Well, the evidence is that this device, as you can see by the pictures, goes from a full circle to an ellipse shape. Well, we can't find any facts here. Why don't the record depictions show a very slight difference? And how much difference do we need before it is a cognizable factual dispute to be resolved by trial? I would submit that a different kind of shape, if my fifth-grade son, and I ask him to draw a circle, and I ask him to draw many circles, none of them will be a true circle, but if I held it up to the class and said, what was the shape? It's a circle. In this environment, this industrial equipment, it's not fine watches. We would recognize a circle. If I asked him to draw a diamond, which, before this overlaps, and we're not even down to the all-the-way final overlap position, which is going to have sharp corners and straight sides, somebody would say, is that a different kind of shape? A diamond is an ellipse, which is that middle shape that has a major axis. Is your argument, if you refer to these boards as 1, 2, and 3, is your argument that 2 and 3 might be similar, but that 1 is very dissimilar from 2 and 3? I would argue that all three are dissimilar, because... Well, let's suppose we reject that. Suppose we say that 2 and 3 raise a fact issue as to whether they're similar. Then I would argue clearly that 1, as a circle, is very different than 3, which is a diamond with straight sides, when you come down to that very small arc of a circle, which is a fraction of an inch long, versus what we're depicting is, in fact, a full-sized device. Where does... But isn't, in fact, 3 exactly... I'm very close to the same shape, it's just that we're close enough, the shape is small enough we don't detect the arc anymore. But there has to be an arc, right? Because it's a curved bar that's moving. There absolutely has to be some arc. So why wouldn't we find that it's the same shape, not even a different shape at all? Because it has four sharp corners, based on the way those arcs, which, if you took four segments of a circle, four quadrants, and started overlapping them and moving them, we would go from the position where there is no corners to the position where there's four distinct corners. And I would submit that that means it's a different kind of shape, because we've gone from no corners to four distinct sharp corners. Where does the first board come from? Who put in the evidence that it has that shape at some point? We put that into evidence, and, in fact, those appear in the attachments to our summary judgment brief. They're at pages 342 to 352. Is that before engaging the bag? There is no limitation as to the size of the bag that can win this device. It functions for a bag that would be that size. You can put the neck of the bag through. But we have a means for moving that is... Movement is kind of presumed as part of this claim limitation. So, presumably, if it's moving, it's engaged the bag, right? It will engage whatever size bag neck is placed through the opening. If it is a large bag neck, and there is no description in the patent specification, there's no picture in the drawings, there is no description whatsoever of what size bag neck is going into these devices. But the answer to Judge Frayer's question is that Ward 1 here is before engagement with the bag, right? No, if I put a bag neck in that's that size, it would engage the bag upon infinitesimal movement. Now, if there is a slightly smaller bag... Is that before moving the bars? If I pull through a bag neck that is oversized, as soon as, and presumably, you're going to discharge material and then you're going to be trying to close these bars through a column of material that's being discharged, that material will push the bag neck out to its full size. If it is that size, then it will engage. If the bag neck is smaller than that size, whatever the size the bag neck is, which is wholly unspecified and can be numerous sizes in the industry, that's when it will engage. It depends on the bag neck size. But that's not the structure of the claim. The structure defined in this claim is the control bars and the confined shape they define. And, in fact, it's only an intended effect set off in a separate whereby clause that they're saying let's close the bag evenly from all sides to reduce tearing stresses. And that's not what we do, and that's not what Judge Kiesler found looking at these. Because if I have something that looks like a major axis and a minor axis, which is fairly evident in Exhibit 2, it can't be closing evenly because somehow I've traveled from a circle with a full diameter to a much tighter side on two opposing sides and then something more open, hence that football or elliptical shape. And ultimately even the small diamond shape has a long distance between two of the vertices and a short distance between the other two vertices. So even if we look at the whereby clause, which isn't defining structure, we're still not getting the intent, which is closing evenly from all sides. Now, in FlexCon's view, we think the district court got it right, and we think this case is more similar to Sage Products. And this is the case where what Spiroflow is asking this court to do is just to take that limitation out of the claim. That limitation is superfluous. They don't care what the shape is.   That limitation is superfluous. They don't care what the shape is. All they have to do is close the bag neck evenly. Now, it's interesting that Judge Kiesler, when he was determining this, said, geez, close the bag neck evenly. Isn't that synonymous with saying it keeps the same shape? Because if I start with a rectangle, which is the only example given in the patent, and it moves in evenly from all sides, I should end up with the same rectangular shape. Was their expert examined about Figure 12? He was not an expert. He put in an affidavit that his employee, or Spiroflow, never submitted an expert report, and he was not examined. Let's assume for a moment that he gave relevant testimony, and your opponent was discussing his testimony about the different shapes. You rely on that, right? Yes. Okay. Was he asked whether Figure 12 was a very similar shape to 13 and 14, for example? I believe that his affidavit was submitted after he had been deposed, and I don't believe that was asked. So in his deposition he wasn't asked about Figure 12? Those figures were things he prepared. They were not the actual device, and they were not prepared. But that doesn't answer my question. Was he examined about Figure 12? Was he asked whether Figure 12 was similar in shape to Figure 13? His only testimony is what we reproduced in our brief that is relevant to shapes. The answer is he wasn't asked about that. He was not asked about that, yes, Your Honor. But what he was asked about was what were these shapes, and he clearly identified one as a circle. He clearly identified one as a rhombus and indicated that it had curved sides, and then he said the third one was a square except without right angles. In his mind, he didn't say, Jesus, these are all the same shapes. He identified different shapes. But he also said that they were very similar, didn't he? Did he say that? He said it with respect to two of the shapes. He said that they are similar. But not with respect to the circles? But not with respect to the circles, and not with respect to Exhibit A367, which was the ellipse. He said that was circular and had a major axis and a minor axis. Now, the spiral of counts as shown is only those two of the closest ones to the closing position, and if we put up the fourth board there instead of the second board, you'll see that he had actually identified the circle, something that was circular but not a circle, having a major axis and a minor axis, and he didn't say they were similar to the smallest two. He identified those as different. So the issue here isn't whether when we get down to the very final changes in shape, which certainly are very similar when we're down at that very small size, it's what does this device do? And we would submit, I don't think we could have designed a device to change shape more to go from this full circle through these iterations, which continuously change, down to that final diamond shape right before it closes. So his testimony, and if we look at the exhibit, and we look at the last two figures that we put into the appendix, the A350 and A351, I can't argue with you that those are substantially different figures, but I think that misses the point, that the device closes a bag neck that can be the full diameter of the device. And if the patentee said, this is great for a certain size bag, and it has to be for a small diameter bag, and we're going to look at when these arms contact the bag, I guess I would have to agree with you that yeah, that would be very similar if it was a six inch diameter bag, and that's the only bag that ever went in the device. That's a good intended effect, but the market uses all kinds of bags, all kinds of sizes, and the point of building a device to that size is, where you can use it for any different type of bag up to a certain size, which is the size we're showing there. Additionally, we're talking about functional language in the claim, about contacting a bag neck, the bag is not part of the claim. So if it's not part of the claim, when we're looking at the structure, what's the structure of this device, what are those steel bars doing, it's pretty clear. They're changing, they have different kinds of shapes. So this is a staged products kind of case, where if we just ignore that limitation and we say, you know what, we don't care what the confined shape does, let's take it out of the claim. Then you're right, it's an infringement. But I think that's exactly what staged products and Friedman and a number of other cases warned, went into whether a majority could equal a minority. We're looking at this case and we're saying, if a claim says, don't change shape, and a person of ordinary skill in the art is going to say, as square as a square, if it was a circle and it stayed a circle, maybe if we had 12 bars and they were all little pieces of circles and were very concentric, like the iris of the camera, I would say, yes, we have an issue. But with these facts, I can't see how there would be an issue of changing extremely from a circle all the way down to a sharp, four-cornered diamond is not changing shape. It is truly a different kind of shape that you end up with before these bars overlap. The only other thing we can say is that I think Judge Kiesler went through this argument in his analysis and he talked about the functional limitation to whereby clause. And it was pretty apparent that given the configuration, even down at the small sizes, we don't change evenly anyway. So if maintaining the same shape means change evenly, if we have a major axis and a minor axis that carries through, at least into the ellipse and the diamond, we don't have it. Okay, thank you, Mr. Lewis. Mr. Adams, you have... Yeah, that's about right. Your Honor, we had a geometry lesson, but we haven't had much discussion really about the real world. There is absolutely nothing, nothing in the record suggesting that you would have a bag opening the same size as what's shown on the left-hand side. What you do have in the record is the testimony by affidavit, there's actually two of them, by David Hesketh, who has been in this particular business for 16 years. What Mr. Heiss referred to as the unrebutted expert report was by a guy who's an expert in computational thermodynamics. But don't Hesketh's drawings on page 1059 show the similar shapes? Circular shape for the flexicon device going down to the minor diamond? Yes, this is a situation where you have a 18-inch power sensor with an 18-inch opening with a 14-inch bag. So there's a 2-inch gap on either side before the bars contact the bag. And then you can see downward from that. So doesn't Hesketh's own drawing show a change in shape? No. In a rather marked one? Not within the context of this patent. I don't understand. What does that mean, not within the context of this patent? Your Honor, the context of the patent relates to... I disagree with Mr. Heiss, obviously, about the meaningfulness of the claim language, but the context of the patent is understanding what's happening to this spout when the bar is engaged. And that, at a minimum, is a factual issue. Thank you, Your Honor. I see my time is up. Thank you, Mr. Adams. I'll rise. The honorable court is adjourned from day to day. Thank you.